## A01A2397. McKINNEY v. THE STATE.
(555 SE2d 468)

ELDRIDGE, Judge.

A Wilcox County jury found Larry McKinney guilty of burglary. He appeals, raising several enumerations of error that he claims require reversal of his conviction. Upon review, we disagree and affirm.

1. In his first three enumerations of error, McKinney challenges the sufficiency of the evidence against him.

> An appellate court determines only the legal sufficiency of the evidence adduced below and does not weigh the evidence or assess the credibility of the witnesses. Additionally, this court will not second-guess what evidence the jury chose to believe. As long as there is some competent evidence on each element necessary to prove the state's case, the jury's verdict will be upheld.[1]

With these principles in mind, the evidence of record shows testimony from a store owner that the glass front door of his grocery, Snipes Fine Food, in Rochelle was smashed. A brick was found inside the store amid the debris. Packages of meat totaling $733 were taken from the meat counter.

A patrol officer testified that he checked the Snipes Fine Food store at 2:00 a.m. as per his routine and he noted no problem. When he returned to the store on patrol at 5:00 a.m., the glass was shattered.

There was testimony from an employee of a late night bar/res-

---

[1] (Punctuation and footnotes omitted.) *Brown v. State*, 246 Ga. App. 517, 518 (1) (541 SE2d 112) (2000).

taurant in Rochelle that on the incident date McKinney came into the premises at approximately 3:00 a.m. with a grocery bag of meat in an attempt to sell such. The owner of the establishment refused to buy the meat.

An inmate/trustee at the Wilcox County jail testified that McKinney told him he threw a brick through the Snipes Fine Food window. Later, the trustee saw a brick wrapped in a bag in the back of a truck belonging to the Chief of the Rochelle Police Department. He told McKinney about it, and McKinney stated, "Yeah. That's the one."

McKinney was arrested and gave a statement to the police that he had indeed attempted to sell meat to a local establishment at 3:00 a.m.; however, McKinney told the officer that he obtained the meat for $20 from a man in a car who had stopped him and asked him if he wanted to buy it. McKinney did not know the man and could not describe him. McKinney stated that he purchased the meat from the man for the purpose of resale to others, but thereafter no one would buy the meat because of the "Snipes stickers" on the meat packages.

In addition, the State introduced evidence of three prior burglaries — to which acts McKinney had previously pled guilty — for the purpose of showing identity, course of conduct, and modus operandi. Each of the prior burglaries occurred between 2:00 a.m. and 3:00 a.m., and in each case, McKinney threw either a brick or concrete block through the front glass window of a food market/convenience store in Rochelle for the purpose of removing merchandise therein.

We find this evidence more than sufficient for a rational trier of fact to have found McKinney guilty beyond a reasonable doubt of the burglary of Snipes Fine Food.[2]

2. Next, McKinney contends his trial counsel rendered ineffective assistance at trial. He claims his attorney: failed to challenge for cause a juror who stated he could put aside feelings of partiality he felt for the State and decide the case on the law and the facts; failed to investigate the case; failed to interview witnesses; failed to file motions to suppress; failed to present alibi evidence; failed to prepare for trial; failed to advise the trial court that a juror on the panel was sleeping; failed to object to erroneous charges to the jury; failed to reserve objection to the court's charge; and failed to prevent the introduction of "uncertified and unconnected evidence."

The proper standard to be employed in determining enumerations concerning ineffective assistance of counsel, whether based upon a claim of right arising under federal or state

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

law, is the two-pronged test announced in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). First, appellant must show that counsel's performance was deficient; second, [he] is required to show that [he] was prejudiced by counsel's deficient performance. There is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance, and that any challenged action by trial counsel might be considered sound trial strategy. As to the second prong, the question is whether there exists a reasonable probability that, but for [his] counsel's errors, the jury would have had a reasonable doubt regarding appellant's guilt, that is, but for counsel's unprofessional errors, the result of the proceeding would have been different. Further, a trial court's finding that a defendant has been afforded effective assistance of counsel must be upheld unless that finding is clearly erroneous.[3]

In that regard:

(a) The similar transaction evidence was clearly admissible under the standard of *Williams v. State*;[4] thus objection thereto would be meritless and no prejudice can result. Likewise, McKinney provides no legal basis for filing a motion to suppress either the "brick" or his statement to the police so as to demonstrate the merit of such motion. Further, a challenge for cause to a juror rehabilitated under the standard of *Johnson v. State*[5] would be without merit. In each of these instances, the "[f]ailure to make a meritless objection cannot be evidence of ineffective assistance."[6]

(b) In this case, McKinney, who was indicted as a recidivist, told his trial attorney that he wished to accept a negotiated offer and plead guilty; however, on the day the case was to be called, McKinney "very adamantly decided" he wanted to try the case. Trial counsel had interviewed the only witnesses provided by McKinney and determined that such witnesses did not corroborate what McKinney said. Counsel felt prepared for trial and testified:

> The issues were simple. I had already heard what the State's witnesses were going to testify to. I didn't feel like I needed any further discovery. I felt like I was prepared to go

---

[3] *Thigpen v. State*, 248 Ga. App. 301 (546 SE2d 60) (2001).

[4] 261 Ga. 640, 642 (2) (409 SE2d 649) (1991).

[5] 262 Ga. 652, 653 (2) (424 SE2d 271) (1993). See also *McCannon v. State*, 268 Ga. 393, 395 (4) (489 SE2d 801) (1997).

[6] (Punctuation omitted.) *Demetrios v. State*, 246 Ga. App. 506, 513 (7) (a) (541 SE2d 83) (2000).

to trial. . . . Of course, I also felt it was totally useless to go to trial because of the nature of the evidence. . . . I urged Mr. McKinney not to roll the dice as he wanted to do because we had worked out a fairly good plea bargain and he would be facing a much longer period of time if he failed at trial.

Accordingly, we find that counsel's testimony supports the trial court's conclusion that McKinney's attorney was prepared for trial and therefore such conclusion is not clearly erroneous.[7] Further, any deficiency with regard thereto was due to McKinney's last minute decision to go to trial.

(c) Trial counsel also testified that he saw a juror who, at one point during trial, had his eyes closed, but he determined that the juror was not sleeping, and so he did not bring it to the trial court's attention. Such a judgment call does not provide grounds for a claim of ineffective assistance of counsel.[8]

(d) Finally, counsel determined that there was no basis for objection to the trial court's charge to the jury and thus did not object or reserve objections thereto. McKinney, however, contends that reservation of objection to the charge was essential due to allegedly erroneous charges on (i) parties to a crime and (ii) circumstantial evidence.

(i) McKinney through his testimony raised the issue of parties to a crime by implying that "another person" burglarized Snipes Fine Food and that he was just disposing of the stolen goods. Thus, such charge was tailored to the evidence and does not provide grounds for objection.

(ii) In the charge on circumstantial evidence, the trial court used the word "include" instead of "exclude": "The theory of guilt must include every other reasonable theory than the guilt of the accused." There is no doubt that this charge was error, just as there is no doubt that the charge was the result of an inadvertent slip of the tongue. Moreover, there is no doubt whatsoever that even the most capable trial attorney might miss the difference in pronunciation between "include" and "exclude" during the actual giving of an entire jury charge; it is only in post-conviction attack that the luxury presents itself to pore over the written record and discover such errors.

Notwithstanding, under the circumstances presented here, any error in the jury charge must be evaluated from the prejudice prong of an ineffective assistance of counsel claim, i.e., a *reasonable probability* that the outcome of the trial would have been different

---

[7] *Mann v. State*, 240 Ga. App. 809, 811 (3) (524 SE2d 763) (1999).

[8] *Hines v. State*, 248 Ga. App. 752, 756 (548 SE2d 642) (2001); *Smith v. State*, 207 Ga. App. 290, 291 (2) (428 SE2d 95) (1993).

but for the error.[9] To that end, we must inquire: is there a reasonable probability that the jury would have acquitted McKinney if the word "exclude" had been properly used? We think not.

The evidence of McKinney's guilt was overwhelming and was determined by the jury in 16 minutes, a time period the selection of a foreperson may often exceed. The evidence included three prior instances wherein McKinney burglarized the same type of establishments, using the same method of entry, during the same early morning hours, in the same small town. The evidence included McKinney's admission that he was in possession of the stolen meat almost immediately after the taking, and it included McKinney's admission to a fellow inmate that he had broken out the window of the grocery store. Moreover, McKinney's assertion that an unknown, undescribable man stopped him in the street at 3:00 in the morning in small town Rochelle in order to sell him meat is simply not an alternative "reasonable" hypothesis to McKinney's guilt so as to provide the jury with a choice to acquit.

> No new trial is required for failure to charge on circumstantial evidence where the case is not close or doubtful and the charge on reasonable doubt is full and fair[, as it was in this case]. There is yet another reason for not reversing this case for failure to charge the law of circumstantial evidence. That is, no other reasonable hypothesis save that of the guilt of the accused has been suggested. Should the case be retried so a jury can hear those words when no other reasonable hypothesis has been offered? Our answer is in the negative.[10]

In sum, we find McKinney's claims of alleged deficiency on the part of his trial counsel are either: factually meritless; the result of trial strategy and judgment; the result of McKinney's own actions; or without prejudice so as to support a claim of ineffective assistance of counsel. Thus, this claim of error is without merit.

3. McKinney contends the trial court erred in admitting similar transaction evidence because no witnesses testified during the Uniform Superior Court Rule 31.3 (B) admissibility hearing, and the record does not contain a similar transaction ten-day notice. McKinney made no such objections at trial; thus, these issues are waived.[11]

Moreover, witnesses need not testify at a similar transaction

---

[9] *Gordon v. State*, 273 Ga. 373, 377 (4) (541 SE2d 376) (2001).

[10] (Citation and punctuation omitted.) *Rash v. State*, 207 Ga. App. 585, 587 (5) (428 SE2d 799) (1993).

[11] *Jones v. State*, 272 Ga. 884, 887 (4) (536 SE2d 511) (2000).

admissibility hearing. "A hearing in which the State relies upon the statements of the prosecuting attorney to make the required showing for the admissibility of similar transaction evidence is sufficient to satisfy the requirements of USCR 31.3 (B)."[12]

Further, McKinney does not claim that he did not receive timely notice of the State's intent to use the similar transaction evidence. He claims only that the *record* does not contain such notice. Thus, McKinney has made no showing, nor do we discern, that any prejudice to him has resulted.[13]

4. Following a hearsay objection, there was no error in permitting State's witness Janie T. Bell to testify as to what the restaurant/bar owner told McKinney when he attempted to sell the owner meat at 3:00 in the morning ("he said, you know, he would not buy any pork chops because he had just bought a bunch of pork chops"). Bell was present to hear the exchange between McKinney and the owner, and it has long been the law in Georgia that "a witness may testify as to what [she] saw and heard in the defendant's presence."[14]

5. Lastly, McKinney contends he was denied his right to be present during all critical stages of his trial because he was not present for a motion for directed verdict at the close of the State's case.

We have reviewed the transcript with regard to this issue. It is unclear therefrom whether or not McKinney was in fact present for the motion for directed verdict. There is no indication that he was not except for a single comment from defense counsel that he would "be willing to proceed without my client being present." Whether he did in fact proceed without his client present is not established in the record. Immediately following the brief motion, McKinney was called to the stand to testify on his own behalf. Thus, it is complete speculation as to whether or not McKinney was in fact present, and if he was not, at what point during the motion he was returned to the courtroom so as to be able to take the stand *immediately* following the denial of the motion for directed verdict.

While current counsel maintains before this Court that McKinney was removed from the courtroom at the same time as the jury and was not present for the directed verdict motion, counsel is the only one to so maintain. McKinney — who was otherwise extremely vocal during the hearing on the motion for new trial — never testified that he was removed at the close of the State's case; he never testified that he was not present for the directed verdict motion; he

---

[12] (Citation and punctuation omitted.) *Talmadge v. State*, 236 Ga. App. 454, 457 (1) (e) (512 SE2d 329) (1999).

[13] *Sweatman v. State*, 181 Ga. App. 474-475 (352 SE2d 796) (1987); *Wells v. State*, 208 Ga. App. 298, 304-305 (430 SE2d 611) (1993).

[14] (Punctuation omitted.) *Jarrett v. State*, 212 Ga. App. 381, 383 (441 SE2d 843) (1994).

never testified that he would have elected to be present at the motion for directed verdict; and McKinney's trial counsel was never questioned at all with regard to this issue. Thus, there is no evidence in the record as to this point other than the single ambiguous comment referenced above.[15]

Accordingly, we will not reverse on this basis. A waiver of constitutional rights will not be presumed, and the State has the burden to show such from the record;[16] however, under the circumstances presented here, we do not reach the propriety of any "waiver" of McKinney's presence, since his lack of presence is not *factually* established, a burden that belongs to McKinney. "This court cannot consider the factual assertions of the parties appearing in briefs when such evidence does not appear on the record."[17] Since McKinney has failed to demonstrate by evidence of record that he was in fact not present during the motion for directed verdict, there is no factual basis for the legal arguments made and his claim of error is meritless.[18]

Further, there is no contention that McKinney was not present when his counsel announced, "Motion for directed verdict, Your Honor," immediately after the State rested and in the presence of the jury. Thereafter, the trial court announced that the jury needed to go to the jury room for such motion. Thus, even if McKinney was removed with the jury, as alleged by current counsel, McKinney knew that the motion for directed verdict was being made at that time, and he remained silent both when he was allegedly removed from the courtroom and when he was allegedly returned thereto. "[McKinney's] counsel made no objection and [McKinney] remained silent as well. Therefore, we conclude that [McKinney] acquiesced in the proceedings that occurred . . . in his absence."[19]

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*

DECIDED OCTOBER 11, 2001.

*David E. Morgan III*, for appellant.

---

[15] Compare *Pennie v. State*, 271 Ga. 419, 421 (520 SE2d 448) (1999) (both Pennie and her trial counsel testified at the hearing on the motion for new trial that Pennie was not present; trial counsel testified that he had never discussed the matter with his client and that he never sought or received her permission to waive her presence; and Pennie testified that she would have elected to be present had she known of it).

[16] *Keith v. State*, 218 Ga. App. 729 (463 SE2d 51) (1995).

[17] (Punctuation omitted.) *Leatherwood v. State*, 212 Ga. App. 342 (1) (a) (441 SE2d 813) (1994).

[18] *Griffin v. State*, 241 Ga. App. 783, 786 (7) (527 SE2d 577) (1999).

[19] *Holsey v. State*, 271 Ga. 856, 861 (5) (524 SE2d 473) (1999); *Parker v. State*, 220 Ga. App. 303, 312 (469 SE2d 410) (1996).

*Denise D. Fachini, District Attorney, Cheri L. Nichols, Assistant District Attorney*, for appellee.